| | | |
|---|---|---|
| TERRAKO STALLINGS, individually and d/b/a/ ODYSSEY SOLUTIONS, INC., | ) ) ) | |
| Plaintiff, | ) ) | 1:12-CV-298 |
| v. | ) ) | Judge Curtis L. Collier |
| THE LATIMER CONSULTING GROUP, INC. and ATOS IT SOLUTIONS AND SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) | |

# M E M O R A N D U M

Before the Court are motions for summary judgment filed by Defendants The Latimer

Consulting Group ("Latimer") and Atos Solutions and Services, Inc. ("Atos") (Court File Nos. 30

and 32, respectively). Defendants seek summary judgment on the complaint filed by Plaintiff

Terrako Stallings, individually and d/b/a Odyssey Solutions, Inc ("Plaintiff") (Court File No. 1).

As Plaintiff notes in his Response in Opposition to Summary Judgment, "[t]his is a simple case

masquerading as a complex one" (Court File No. 34). For whatever reasons Plaintiff chose to enter

into a contract not in his own name but rather in the name of Odyssey Solutions, Inc. Unfortunately,

no such corporate entity as Odyssey Solutions, Inc was in existence or had legal status to enter into

contracts. Accordingly, for the following reasons, the Court will **GRANT** Defendants' motions for

summary judgment.

## I.      FACTS

In 2010 Atos, a Connecticut corporation, entered into an agreement with Volkswagen

("VW") to provide information technology ("IT") services to the auto company's manufacturing

facility in Chattanooga, Tennessee.[1]  Atos then contracted with Latimer, another Connecticut corporation, for the latter to provide IT personnel to service Atos's account with VW.  The Atos-Latimer agreement stated that Atos could "at any time, request in its sole discretion that [Latimer] Personnel be removed or replaced" (Court File No. 32-4, Ex. 1).  Further, the agreement stated that no provision in it "will be deemed to create a contractual relationship between [Atos] and any [Latimer] Personnel" (*id.*).

Atos wanted Plaintiff to lead Atos's team at VW.  After some discussion about Atos directly hiring Plaintiff, Atos instead asked Latimer to make Plaintiff an independent contractor of Latimer (Court File No. 30-2, Stallings Dep., p. 26).  Latimer then entered into an agreement with Plaintiff's firm, Odyssey Solutions, Inc. ("Odyssey"), whereby Plaintiff would serve as the Senior Delivery Director for Atos's team at the WV facility.  This contract between Latimer and Odyssey is the sole agreement upon which Plaintiff bases his contract-related claims.

The Latimer-Odyssey agreement is dated December 20, 2011.  Its first sentence reads,  "This Consulting Agreement (the "Agreement") is made by and between The Latimer Consulting Group, Inc, located at 204 Main Avenue Norwalk, CT 06851 ('The Latimer Consulting Group, Inc') and Odyssey Solutions, Inc. - ('Terrako Stallings')" (Court File No. 1-1, Ex. A).  Notices provided under the agreement were to go to "Odyssey Solutions."  The contract refers to Odyssey Solutions, Inc./Stallings as "Consultant" and provides that Consultant would be paid "$95 per hour Corp to Corp" (*id.*).  Plaintiff's signature is on the last page, above his typed name.  The agreement states that it establishes an "Independent Contractor" relationship and no other type of relationship  (*Id.*).

---

[1]  At the time, the parties to this agreement were VW and Siemens IT Services & Solutions, Inc.  The latter was bought by Atos in 2012.  For clarity's sake the Court refers to that agreement as one between VW and Atos.

The agreement was to "continue for an initial period of 1 year and renewed [*sic*] until end of VW contract with Atos" (*id.*).

At the time, "Odyssey Solutions, Inc." did not exist as a corporation, a fact Plaintiff does not dispute. Asked in his deposition what Odyssey Solution's, Inc. was, Plaintiff said, "It's how I do business sometimes," and after being asked if it was a corporate entity said, "No. It's me," and later noted, "when I'm working it's in operation, when I'm not working it's not" (Court File No. 30-2, Stallings Dep., pp.12-13). He also acknowledged the entity had been previously dissolved and it was incorporated in its current form in the summer of 2012 (*id.* at p. 12). Plaintiff filed as an exhibit a Certificate of Dissolution from the Georgia Secretary of State stating that "ODYSSEY SOLUTIONS, INC[,] a Domestic Profit Corporation[,] has been duly dissolved, cancelled or terminated on **03/12/2010** under the laws of the State of Georgia by the filing of documents in the office of the Secretary of State and by the paying of fees as required . . ." (Court File 34-2, Ex. B) (emphasis in original). An additional exhibit provided is a print-off from the Tennessee Secretary of State website indicating that articles of incorporation for "ODYSSEY SOLUTIONS INC" were filed on **7/20/2012** (*id.*). Plaintiff further admits Odyssey Solutions, Inc. has never paid taxes (Court File No. 30-2, Stallings Dep., p. 19). In addition, Plaintiff admits he did not submit any filings necessary to do business as ("d/b/a") Odyssey in his personal capacity; his only filings for the business were articles of incorporation (Court File 32-1, Stallings Dep., pp. 13-14).

As Senior Delivery Director, Plaintiff was the highest ranking Atos representative at the VW facility (Court File No. 30-2, Stallings Dep., pp. 57-8, Ex. 4; Court File No. 30-1, Olthoff Dep. pp., 28-9). He supervised around 50 Atos personnel (both employees and independent contractors) at the facility and acknowledged he was "ultimately responsible for giving direction to support the

contract, providing services to Volkswagen per the contract" (Court File No. 30-3, Tate Dep., pp. 9-10; Court File No. 30-2, Stallings Dep., p. 58).

By early 2012, it was clear VW had become highly dissatisfied with Atos, a fact none of the parties dispute (Court File No. 30-2, Stallings Dep., pp. 92-3; Court File No. 30-3, Tate Dep., pp. 12, 31-32; Court File No. 35-5, Kless Dep., p. 36). Atos responded by sending in a "rescue team" to try to salvage the account (Court File No. 35-5, Kless Dep., p. 36). After evaluating the situation, including reports about Stallings's poor management style, Atos executives removed Stallings from the account (Court File No. 32-7, Sizemore Dep., pp. 23-27).[2] Stallings did not submit any time sheets to Latimer for work performed after removal, and Latimer did not make further payments, except to bring payments up to date for work done before his removal (Court File No. 30-4, Olthoff Aff., ¶ 7).

Twelve days after Plaintiff filed articles of incorporation for "Odyssey Solutions Inc," he filed the present suit in Hamilton County Chancery Court (Court File No. 1-1). Plaintiff claimed Latimer breached the contract by terminating Plaintiff's services. Plaintiff also claimed Atos (1) as joint employer, breached the contract by terminating Plaintiff's services, or pleading in the alternative, (2) tortiously interfered with a contractual relationship between Plaintiff and Latimer, (3) induced Latimer to breach the contract, or (4) tortiously interfered with a business relationship between Latimer and Plaintiff (*id*.). The case was removed to this court on September 5, 2012. Latimer filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Court File No.

---

[2] Plaintiff asserts the parties disagree about the cause(s) of Atos's poor performance on the VW contract and the circumstances surrounding Stallings's removal. But because those facts are not material to the disposition of this case on summary judgment, as shown below, the Court need not determine whether there is a genuine issue as to whether Plaintiff was removed "for cause."

13), which the Court denied (Court File No. 29). Latimer and Atos then each moved for summary judgment under Federal Rule of Civil Procedure 56 (Court File Nos. 30 and 31, respectively). Plaintiff responded in one brief to Defendants' motions (Court File No. 34), and Latimer and Atos filed replies (Court File Nos. 37 and 38, respectively).[3]

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether

---

[3] Defendants ask the Court to strike Plaintiff's response brief as untimely filed. Defendants contend Plaintiff's response to the summary judgment motions filed July 26, 2013 was due by August 16 (i.e. within twenty-one days) but was filed late on August 19. Defendants, however, ignore that Rule 6(d) of the Federal Rules of Civil Procedure provides an additional three days when service is performed, as here, under Rule 5(b)(2)(E). *See SL Tennessee, LLC v. Ochiai Georgia, LLC*, No. 3:11-CV-340, 2011 WL 7154486, at *2 n.1 (E.D. Tenn. Dec. 8, 2011); *Estate of Hickman v. Moore*, Nos. 3:09-CV-69; 3:09-CV-102, 2011 WL 1058934, at *2 n.3 (E.D. Tenn. March 21, 2011). Adding three days to the twenty-one days provided for in Local Rule 7.1(a) meant that Plaintiff's response to the summary judgment motions was due by August 19, when it was filed.

"the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

### A. Latimer

Latimer argues it is entitled to summary judgment on a number of alternative grounds: (1) the contract was void because Odyssey did not exist when the contract was executed, (2) Latimer never breached the agreement, (3) the doctrine of impossibility excuses nonpayment to Plaintiff, and (4) just cause existed for Latimer's failure to make additional payment to Plaintiff. On the first ground, Latimer argues the contract between it and Odyssey was void because Odyssey was not incorporated at the time the contract was executed.[4] Even Plaintiff does not contend Odyssey was

---

[4] Plaintiff argues Latimer has waived its right to attack the contract's validity because it did not raise the issue in its 12(b)(6) motion and had not filed an answer before its motion for summary judgment. There is no rule, however, that this type of defense is either raised or waived when a party files a 12(b) motion. Only 12(b)(2)-(5) are subject to the waiver provision of 12(b), (g) and (h). Further, in the case Plaintiff cites, *U.S. Fire Ins. Co. v. City of Warren*, 87 F. App'x 485, 491 (6th Cir. 2003), the defendant raised the affirmative defense of equitable estoppel for the first time during summary judgment, months *after* filing an answer that left out the defense. Here, Latimer

a *de jure* corporation at that time. However, Plaintiff argues the contract is still enforceable because it was between Latimer and Stallings as an individual, or, in the alternative, Odyssey was a *de facto* corporation or the doctrine of corporation by estoppel means Latimer is estopped from denying Odyssey's corporate status. As the parties acknowledge, the contract contains a Connecticut choice-of-law provision, thus the Court applies the law of that jurisdiction.

### 1. Parties to the Contract

Plaintiff argues the disputed contract was between Latimer and Stallings, while Latimer claims it was between it and Odyssey as a corporation. The Court concludes that the contract is clearly one between Latimer and an entity called Odyssey Solutions, Inc, which is held out to be a corporation. The first sentence of the contract states, ""This Consulting Agreement (the "Agreement") is made by and between The Latimer Consulting Group, Inc, located at 204 Main Avenue Norwalk, CT 06851 ('The Latimer Consulting Group, Inc') and *Odyssey Solutions, Inc*. - ('Terrako Stallings')" (Court File No. 1-1, Ex. A) (emphasis added). That "Terrako Stallings" is included in parenthesis does not make him a party; what is included in a parenthesis after a corporate name is generally understood to be another way of referring to the contracting party preceding it—"Odyssey Solutions, Inc." Notably, "Terrako Stallings" does not even appear again in the contract until the signature section at the end (*id*.). As Plaintiff points out, the contract refers instead to "Consultant." At times this appears to refer to Stallings as an individual, while at other times it appears to refer a business entity (e.g. "Consultant certified that *it* has not entered into any other outstanding agreement or obligation that is in conflict . . ." and "Consultant agrees that *it* will not, during *its* engagement with the Latimer Consulting Group, Inc or VOLKSWAGEN, improperly

moved for summary judgment before its answer was filed, not after.

use or disclose any propriety information . . .) (*id.*) (emphasis added).

Also, the contract provided that Latimer "agrees to pay to Consultant a fee of $95 per hour *Corp to Corp*," further indicating the corporations were entering into an agreement and Odyssey, not Stallings, would receive funds pursuant to it (*id.*) (emphasis added). Plaintiff points out that the signature area displays "Terrako Stallings" in print instead of Odyssey. But, when linked to the first sentence of the contract, this would indicate Stallings is signing for Odyssey. Corporations, after all, act through their officers.

In sum, despite Stallings' apparent belief that Odyssey and he are one-in-the-same (Court File No. 30-2, Stallings Dep., pp.12-13), and that Latimer was obviously contracting with Odyssey in order to obtain Stallings's expertise, the contract itself was clearly made between the The Latimer Consulting Group, Inc and Odyssey Solutions, Inc. Even an entity holding itself out as a corporation whose president is vital to the enterprise is still holding itself out as a corporation. Plaintiff cannot simply enter into a contract as Odyssey Solutions, Inc. then later claim he contracted in his individual capacity. There are sound reasons for the corporate structure. Various legal protections are afforded by the law for that structure. When one dispenses with the structure, one cannot claim the benefit of that structure. That is sad but the reality of the situation here.

### 2. *De Facto* Corporation

Plaintiff next argues that even if the contract was between Latimer and Odyssey, not himself, it is still enforceable because, despite Odyssey's lack of *de jure* corporate status, it was a *de facto* corporation. Plaintiff must either establish *de facto* corporate status or show that Latimer is otherwise estopped from attacking Odyssey's corporate status because "[u]nder Connecticut law, a nonexistent corporation does not have the legal capacity to make a contract" and such an invalid

agreement will not be enforced. *Int'l Sport Divers Ass'n, Inc. v. Marine Midland Bank, N.A.*, 25 F. Supp. 2d 101, 112 (W.D.N.Y. 1998) (citing *Chieppo v. Chieppo*, 88 Conn. 233, 90 A. 940, 941 (1914) (hereinafter "*Marine Midland*")).

Under Connecticut law, "*de facto* corporate status exists where the party 1) affirmatively attempts to incorporate under the existing laws, 2) believes that it was successful, and 3) thereafter conducts its business as a corporation." *Marine Midland*, 25 F. Supp. 2d at 107 (citing *Ocean State Restaurant Equip. and Supply, Inc. v. Egg Roll King, Inc.*, No. CV–89–0509579–S, 1990 WL 269130 (Conn.Super. July 30, 1990) and *Clark–Franklin–Kingston Press, Inc. v. Romano*, 12 Conn.App. 121, 529 A.2d 240, 242 (1987)).

Construing Connecticut law, the United States District Court for the Western District of New York applied this rule in a case similar to the present one. In *Marine Midland*, plaintiff ISDA sued defendant Marine Midland Bank for breach of a contract that ISDA, a fictitious corporation, entered into with Marine Midland Bank. The court found ISDA was not a *de facto* corporation when it entered into the agreement. The Court noted, "[a]t his deposition, [ISDA's president] stated that he did not attempt to incorporate ISDA before executing a contract with Marine as ISDA's president, and more specifically, that he did not file any incorporation papers with the Secretary of State." *Id.* at 108. The court acknowledged ISDA may have *intended* to incorporate, but explained that "an intent to incorporate, without more, is not sufficient to establish a *de facto* corporation." *Id.* The court also noted that the intention of the counterparty to the contract was "not material to the question of ISDA's *de facto* status or its capacity to contract." *Id.* at 109. After finding that plaintiff ISDA was not a *de facto* corporation, and that corporation by estoppel did not apply, the court held ISDA could not sue under the void contract.

In the present case, Plaintiff points to no evidence showing he affirmatively attempted to incorporate Odyssey, and believed Odyssey was indeed incorporated, when the contract with Latimer was executed. Instead, Plaintiff provides evidence showing Odyssey was dissolved in March 2010 after documents were filed with and fees paid to the Georgia Secretary of State[5] (Court File No. 34-2, Ex. B). This dissolution occurred a full twenty-one months before execution of the Latimer-Odyssey contract in December 2011. Plaintiff provides no evidence showing he did anything to incorporate Odyssey until August 2012, twelve days before filing the present suit. To the contrary, the evidence suggests Plaintiff knew Odyssey was not incorporated, but rather was dissolved, at the time of the execution of the contract.

Plaintiff's deposition also undermines any notion that he believed Odyssey was a corporation at the relevant time. Asked in his deposition what Odyssey Solution's, Inc. was, Plaintiff said, "It's how I do business sometimes," and after being asked if it was a corporate entity he said, "No. It's me," and later noted, "when I'm working it's in operation, when I'm not working it's not." (Court File No. 30-2, Stallings Dep., pp.12-13). The Court sees no evidence to indicate Odyssey should be considered a *de facto* corporation.

### 3. Corporation by Estoppel

Plaintiff argues that even if Odyssey is not a *de facto* corporation, Latimer is estopped from denying its corporate status. In general, "one who contracts or deals with an entity as a corporation thereby admits that the entity is a corporation and is estopped to deny its incorporation in an action

---

[5] This would of course indicate that, contrary to what Plaintiff states in his brief, it does not appear the corporation was *administratively* dissolved—i.e. by the state of Georgia—but rather it was dissolved through the normal process of filing with the Georgia Secretary of State and paying fees.

arising out of the contract or course of dealing." *Marine Midland*, 25 F. Supp. 2d at 109 (citing Fletcher Cyclopedia Corporations § 3910 (perm. ed.1992)). Connecticut recognizes exceptions to this general rule, however. Relevant here is that a party may not invoke estoppel if that party knew or had reason to know it was not incorporated at the time in question:

> 'As in other cases of equitable estoppel, there must be ignorance of the truth and absence of equal means of knowledge of it by the party who claims the benefit of the estoppel. *Knowledge, on the part of the one claiming the estoppel, that there is no corporation, precludes an estoppel*, without regard to whether the estoppel is relied upon by the corporation or by the party other than the alleged corporation.'

*Marine Midland*, 25 F. Supp. 2d at 109 (quoting Fletcher, § 3910) (emphasis added). In other words, "a party seeking the benefit of estoppel must be ignorant of the truth and lack equal means of knowledge." *Id.* at 111 (citing *Harrill v. Davis*, 168 F. 187, 195 (8th Cir.1909)). Thus, "one who deals with parties masquerading under a name which represents no corporation is not estopped from denying that it is a corporation. " *Id.*

Applying this principle, the *Marine Midland* court found that ISDA's president could not claim Marine Mindland Bank was estopped from attacking ISDA's corporate status because, "[a]s the individual who formed the entity ISDA, he surely had at least an equal means of knowledge as to the requirements for incorporation in Connecticut and ISDA's true status." *Marine Midland*, 25 F. Supp. 2d at 112.

Likewise, Stallings, as the one who formed the entity Odyssey Solutions, Inc, had at least equal means of knowing whether Odyssey was incorporated. In fact the evidence points in one direction: that Plaintiff knew or had reason to know Odyssey was *not* incorporated at the time he entered it into an agreement with Latimer (Court File No. 34-2, Ex. B; Court File No. 30-2, Stallings Dep. pp.12-13). Therefore Plaintiff cannot invoke corporation by estoppel.

As shown above, Odyssey was not a *de jure* corporation at the relevant time, and the doctrines of *de facto* corporation or corporation by estoppel do not apply. "As such, [Odyssey] d[id] not have the legal capacity to contract. Where there is only one determinate party, there is no agreement with any one. 'There is nothing more than an offer lanced into the void.'" *Marine Midland*, 25 F. Supp. 2d at 112 (quoting *Irvmor Corp. v. Rodewald*, 253 N.Y. 472, 171 N.E. 747 (1930)). Thus "the purported agreement between [Latimer] and [Odyssey Solutions, Inc] is therefore invalid and unenforceable." *Id.*

### B. Atos

Atos argues, *inter alia*, that because it was not a party to the Latimer-Odyssey contract, Atos is entitled to summary judgment on Plaintiff's claim that Atos breached the contract. The fundamental basis for all Plaintiff's contract-related claims is that the contract entitled him to a year-long contract to supply IT services, which was cut short when he was removed from the account. As explained above, however, the contract was unenforceable because "a nonexistent corporation does not have the legal capacity to make a contract." *Marine Midland*, 25 F. Supp. 2d at 112 (citing *Chieppo*, 88 Conn. at 233 (1914)). Just as a contract entered into between Latimer and Odyssey, a nonexistent corporation, could not be enforced against Latimer, neither could it be enforced against Atos. Thus the Court need not address whether, if Odyssey had been capable of entering into an enforceable contract, Atos would have been considered a party to it. Plaintiff's claim that Atos breached the contract fails as a matter of law. For the same reason, Atos is due summary judgment on Plaintiff's claims that Atos induced Latimer to breach the contract with Odyssey or tortiously interfered with the contractual relationship between Latimer and Odyssey. To induce a breach of contract or otherwise interfere with a contractual relationship, there must first be a valid contract.

*See Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 406 (Tenn. 2002). And there was not one here.

Plaintiff's remaining claim is that Atos tortiously interfered with the business relationship between Plaintiff and Latimer. The Court applies the law of the forum state, Tennessee, as the contract's choice of law provision does not apply to alleged tortious conduct unrelated to the terms of the contract. To prove tortious interference with a business relationship, a plaintiff must show the following:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means . . .*; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (emphasis in original). Further, as the Tennessee Supreme Court explained, "with regard to improper motive, we require that the plaintiff demonstrate that the defendant's *predominant purpose was to injure the plaintiff*." *Id.* at 701 n.4. (emphasis added). Plaintiff points to no evidence showing a genuine dispute as to whether Atos's predominant purpose was to injure Plaintiff when it removed Plaintiff from the VW account. Plaintiff argues that Atos made the decision in order to put the firm in a better financial position vis-a-vis the VW account (Court File No. 34, Response Brief, p. 11; Court File No. 35-3, Stallings Dep., p. 123; Court File No. 35-6, Sizemore Dep., pp. 11-12, 19). But such an aim is uncontroverted and uncontroversial. It does not raise a genuine dispute as to whether Atos used improper means or had an improper motive (i.e. a predominant purpose to injure the plaintiff). This is not a case of a firm interfering with the business interests of another, but is instead an instance of a firm making staffing decisions in the normal course of business.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Latimer's motion for summary judgment (Court File No. 30) and will **GRANT** Atos's motion for summary judgment (Court File No. 32). There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** this case.

**An order shall enter.**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**